(No. 5966.  May 26, 1933.)

In the Matter of the Application of the GARRETT TRANS-FER & STORAGE CO., INC., to Extend Its Operations Under Second Amended P. U. C. I. Permit No. 14 Between Idaho Falls, Idaho, and Butte, Montana. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Protestant and Appellant, v. GARRETT TRANSFER & STORAGE CO., a Corporation, Applicant and Respondent.

[23 Pac. (2d) 739.]

Geo. H. Smith, H. B. Thompson and Chas. A. Root, for Appellant.

F. E. Tydeman, for Respondent.

GIVENS, J.—The Garrett Transfer & Storage Co. applied to the Public Utilities Commission for a permit, under the provisions of sec. 59–803, I. C. A., to operate or extend its motor bus lines between Idaho Falls, Idaho, and Butte, Montana, by way of Roberts, Hamer and Dubois. The application was contested by the Oregon Short Line Railroad Company, and the only point involved is whether the Public Utilities Commission, in granting the permit, should have considered the provisions of secs. 59–526, 59–527, 59–528, I. C. A., it being the contention of the protestant railroad company that by sec. 59–817, I. C. A., it is necessary for the commission to consider those things pertinent to the granting or refusal of a certificate of convenience and neces-

sity in issuing a permit to an auto transportation company, as defined and covered by chap. 8, title 59, I. C. A.

The determination of this matter involves the consideration of the enactment of chap. 8, which originated as chap. 267, Sess. Laws of 1929. The legislative record shows that the original House Bill 271 required, as a condition precedent to an auto transportation company doing business, the issuance of a certificate of convenience and necessity, but that the Senate, March 5, 1929, as shown by its Journal, pages 377–379, of which the court takes judicial notice (*State v. Eagleson*, 32 Ida. 280, 181 Pac. 935), by amendment, eliminated the provisions with regard to a certificate of convenience and necessity and required the issuance of only a permit. Such elimination has been considered by this court to indicate that the legislature intentionally omitted such provision. (*In re Segregation of School Dist. No. 58*, 34 Ida. 222 at 227, 200 Pac. 138. See, also, *Rieger v. Harrington*, 102 Or. 603, 203 Pac. 576; *State v. Wibaux County Bank*, 85 Mont. 532, 281 Pac. 341; *State v. Hays*, 86 Mont. 58, 282 Pac. 32; *Samples v. Board of Commrs.*, 87 Colo. 227, 286 Pac. 273.)

Protestant, however, contends that sec. 59–817 shows that the legislature intended not only to include, by reference, the provisions with regard to a certificate of convenience and necessity, but all other provisions of the general Public Utilities Law, chapters 1 to 7 of the above title, the language used being that "all provisions of the public utilities law . . . . shall, in so far as applicable, apply to all motor propelled vehicle carriers subject to the provisions of this chapter."

In the first place, sec. 59–802 provides that it shall be unlawful for any "motor carrier," as the term is defined in the chapter, to operate without a permit. Sec. 59–817 also uses the words "motor propelled vehicle," which, however, is nowhere defined in chap. 8. The term "auto transportation company" is defined, and we assume that is what the legislature meant by "motor propelled vehicle."

It will be noticed, however, that the word "permit" is used and not "certificate," and that the Senate struck from the title of the original bill the words "certificate of convenience and necessity," and inserted in lieu thereof the word "permit."

■ This court, construing the phrase "in so far as applicable," in a situation similar to that considered herein, has held that where one statute refers to another and makes the same a part of the former in so far as the same is applicable, in determining what provisions are applicable, the court is called upon to construe into the former as a part thereof only such provisions of the latter as are applicable and will give force and effect to the former statute. (*Gillesby v. Board of Canyon County Commrs.*, 17 Ida. 586, 107 Pac. 71, and followed, to the same effect, in *Hodges v. Tucker*, 25 Ida. 563, 138 Pac. 1139.)

■ Turning now to secs. 59–526, 59–527 and 59–528, I. C. A., a certificate of convenience, by the original Public Utilities Law, was required only for a street railroad corporation, gas corporation, electrical corporation, telephone corporation or water corporation. These various organizations as defined by secs. 59–108, 59–109, 59–116, 59–117, 59–118, 59–119, 59–120, 59–121, 59–124 and 59–125, I. C. A., show that the only carrier of persons and things required to secure a certificate of convenience and necessity was a street railroad, which term, by sec. 59–108, expressly did not include a railway constituting or used as a part of a commercial or interurban railway, and subdivision e of sec. 59–801, defining the term "auto transportation company," expressly excluded from the scope of chap. 8, hence of chaps. 1 to 7, title 59, I. C. A., an auto transportation company operating exclusively within the limits of any incorporated city or village or territory contiguous to such city or village, thus positively indicating that an auto transportation company was not considered as in any way similar to a street railway company. Therefore, by a comparison of these statutory provisions it is apparent that the language used excludes from the scope of a certificate of convenience

and necessity, so far as the transportation of things and people are concerned, any utility or common carrier not operating as a street railway company, and thereby the terms of secs. 59–526, 59–527 and 59–528 would not be applicable to an auto transportation company operating within the terms of chap. 8.

Protestant relies upon *Maine Motor Coaches v. Public Utilities Commission,* 125 Me. 63, 130 Atl. 866, and *Northern Pacific Ry. Co. v. Bennett,* 83 Mont. 483, 272 Pac. 987, in support of its contention. These cases, however, are not applicable because of the difference in the statutes there construed and here considered. In the Maine case, so far as we have been able to discover, from an examination of its general public utilities statute, Rev. Stats. of Maine, 1930, chap. 62, p. 1024, and the various public laws referred to in the decision, the general statute did not require any certificate of convenience and necessity, and the Maine court construed the word "permit," in the special jitney act, to mean "certificate of convenience and necessity."

*Northern Pacific Ry. Co. v. Bennett,* 83 Mont. 483, 272 Pac. 987, did not pass upon any such legislative enactment as we have herein.

The legislature having the authority to designate those carriers or utilities which must secure from the Public Utilities Commission a certificate of convenience and necessity before beginning operations, the plain wording of the statutes involved indicates, by the applicable rules of statutory construction (*Empire Copper Co. v. Henderson,* 15 Ida. 635, 99 Pac. 127; *Swain v. Fritchman,* 21 Ida. 783, 125 Pac. 319; *Turner v. Roseberry Irr. Dist.,* 33 Ida. 746, 198 Pac. 465; *In re Segregation of School Dist. No. 58,* 34 Ida. 222, 200 Pac. 138; *State v. Jutila,* 34 Ida. 595, 202 Pac. 566; *Drainage Dist. No. 2 v. Ada County,* 38 Ida. 778, 226 Pac. 290; *State v. Armstrong,* 38 Ida. 493, 225 Pac. 491, 33 A. L. R. 835), that the legislature did not intend secs. 59–526, 59–527 and 59–528 to apply to auto transportation companies; therefore the Public Utilities Commission did

not err in refusing to consider evidence relative thereto herein.

The order is sustained.   Costs to applicant.

Budge, C. J., and Morgan, Holden and Wernette, JJ., concur.


ON PETITION FOR REHEARING.

(July 12, 1933.)

GIVENS, J.—Appellant has filed a petition for rehearing in which it does not particularly complain of the opinion as far as it goes, but says that the second assignment of error:

"The commission erred in holding that it was not vested with discretion and jurisdiction to deny the application upon it appearing that the territory was adequately served by existing transportation facilities.", is not sufficiently treated or elucidated.

Appellant urges that Commissioner Thompson at the conclusion of the hearing before the Public Utilities Commission indicated that the commission having eliminated, and properly so, as we have herein held, any consideration of the requirements for a certificate of convenience and necessity, did not have any discretion under paragraph (c), sec. 2, chap. 267, Sess. Laws 1929, now sec. 59–804, I. C. A.

The order was in part as follows:

"This extension requested is between Idaho Falls, Idaho, and Butte, Montana, and part of the service in said extension involves an interstate business, which this Commission is without power to deny when the applicant has complied with the state law with reference to a permit, and the issuance to the applicant of an interstate permit to operate over the highways in Idaho and not grant it the right to do intrastate business would by so doing deny to the people of the state the right to freight motor transportation service between points in the state of Idaho. . . . .

"That the applicant having complied with the provisions of the law as to the issuance of permits is entitled to include in its Second Amended P. U. C. I. Permit No. 14 the right to operate freight motor propelled vehicle service between Idaho Falls, Idaho, and Butte, Montana, via Roberts, Hamer and Dubois, Idaho."

Keeping in mind the paragraphs of the order, and reference to the order in the Gem State Transit Company case mentioned by Commissioner Thompson, and conceding without holding that his remarks indicated the commission's attitude, and were in effect reflected in the final order, it is uncertain whether Commissioner Thompson referred to the portion of the Gem State Transit Company case relative to the interstate commerce feature, that involving a certificate of convenience and necessity, or the phrase, "upon good cause shown," as appearing in sec. 59–804, *supra,* because it appears in the Gem State Transit Company case that the commission felt bound to follow *Buck v. Kuykendall,* 267 U. S. 307, 45 Sup. Ct. 324, 69 L. ed. 623, 38 A. L. R. 286, and *Bush & Sons Co. v. Maloy,* 267 U. S. 317, 45 Sup. Ct. 326, 327, 69 L. ed. 627, on the theory that interstate commerce was involved, and the applicant having shown compliance with the state statutes, a permit could not be refused.

However, as to the words, "upon good cause shown," the commission said this:

"There are many elements to be considered in a determination as to whether or not good cause has been shown. In such determination there must be considered all the facts, conditions and circumstances presented in evidence, and after a consideration of all the facts, conditions and circumstances presented, this Commission is of the opinion and finds: . . . .

"2. That good cause has been shown and the applicant is entitled to a permit to operate a passenger and express motor propelled vehicle intrastate service over the route described in Finding No. 1 in Idaho in conjunction with its

interstate operations, and that the protest of the Columbia Gorge Motor Coach System should be dismissed.''

In the case at bar, all evidence offered by appellant was admitted. This evidence, however, did not in any way indicate that respondent had not fully complied with the requirements of sec. 59–804, I. C. A.

█ It would seem, therefore, and we are justified in concluding (*Boise Valley Traction Co. v. Ada County*, 38 Ida. 350, 222 Pac. 1035; *Smith v. Canyon County Con. School Dist.*, 39 Ida. 222, 226 Pac. 1070; *Blandy v. Modern Box Mfg. Co.*, 40 Ida. 356, 232 Pac. 1095; *State v. Dawson*, 40 Ida. 495, 235 Pac. 326), that the commission in the instant case did exercise such discretion as is granted by, and expressly stated in, sec. 59–804, I. C. A., in connection with the phrase, ''upon good cause shown.'' In their judgment the applicant had shown compliance with the requirements of said section; in other words, ''good cause'' for the issuance of the permit, which, being true, the permit would perforce be issued, which was done.

Petition for rehearing denied.

Budge, C. J., and Morgan, Holden and Wernette, JJ., concur.